IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAGNI M.[1],                                              No. 1:17-cv-01333-HZ

                Plaintiff,

      v.

COMMISSIONER OF SOCIAL                                    OPINION & ORDER
SECURITY,

                Defendant.


Tim Wilborn
WILBORN LAW OFFICE, P.C.
P.O. Box 370578
Las Vegas, Nevada 89137

        Attorney for Plaintiff

Billy J. Williams
UNITED STATES ATTORNEY
District of Oregon

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case.  Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 - OPINION & ORDER

Renata Gowie
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

Lisa Goldoftas
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

     Attorneys for Defendant

HERNANDEZ, District Judge:

     Plaintiff Dagni M. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits (DIB) and supplemental security income (SSI). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). I affirm the Commissioner's decision in part, reverse it in part, and remand for additional proceedings.

## PROCEDURAL BACKGROUND

     Plaintiff applied for DIB and SSI on May 13, 2013, alleging an onset date of July 1, 2011. Tr. 199-205 (DIB App.), Tr. 206-13 (SSI App.). Her applications were denied initially and on reconsideration. Tr. 84-107, 136-45 (Initial); Tr. 108-35, 151-56 (Recon.). On April 5, 2016, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 47-83. On June 1, 2016, the ALJ found Plaintiff not disabled. Tr. 15-40. The Appeals Council denied review. Tr. 1-5.

## FACTUAL BACKGROUND

     Plaintiff alleges disability based on having thyroid disease, vision problems, pain in the

lower back, hips, and leg, and problems with both shoulders. Tr. 238, 266. At the time of the hearing, she was forty-nine years old. Tr. 199 (showing date of birth). She has a tenth-grade education and has past relevant work experience as a fast-food cook, waitress, fast-food worker, bartender, and cashier. Tr. 32-33, 54, 74.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141;

20 C.F.R. §§ 404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four.  *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work."  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant can perform past relevant work, the claimant is not disabled.  If the claimant cannot perform past relevant work, the burden shifts to the Commissioner.  In step five, the Commissioner must establish that the claimant can perform other work.  *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).  If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2017, and had not engaged in substantial gainful activity since her alleged onset date.  Tr. 20.  Next, at step two, the ALJ determined that Plaintiff has severe impairments of obesity, right and left shoulder rotator cuff tear status post-surgery, degenerative joint disease, and degenerate disc disease with reported lower back, knee, and hip pain.  Tr. 21-24.  At step three, the ALJ found that these impairments did not meet or equal, either singly or in combination, a listed impairment.  Tr. 24-25.

At step four, the ALJ concluded that Plaintiff has the RFC to lift and/or carry twenty pounds occasionally and ten pounds frequently (including upward pulling); to stand and/or walk about six hours in an eight-hour day; and to sit for about six hours in an eight-hour day.  Tr. 25.

Further, she can bilaterally operate foot controls occasionally; can bilaterally reach overhead with the upper extremities occasionally; can occasionally climb ramps or stairs; can never climb ladders, ropes, or scaffolds; can balance frequently; can kneel, crouch, stoop, or bend occasionally; and can never crawl. *Id.* Finally, she can have no more than occasional exposure to vibration and no exposure to hazards such as dangerous machinery or unprotected heights. *Id.* With this RFC, the ALJ determined that Plaintiff can perform her past relevant work of fast-food worker and cashier. Tr. 32. Alternatively, at step five, the ALJ determined that Plaintiff can perform jobs that exist in significant numbers in the economy such as motel maid, sales attendant, and marking clerk. Tr. 34. Thus, the ALJ determined that Plaintiff is not disabled. Tr. 34-35.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the

court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

DISCUSSION

Plaintiff argues that the ALJ erred by (1) rejecting her subjective limitations testimony; (2) giving little weight to the opinions of two treating physicians; and (3) finding that she can perform jobs which are precluded by her shoulder limitations.

## I. Plaintiff's Credibility

The ALJ is responsible for determining credibility. *Vasquez*, 572 F.3d at 591. Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on 'clear and convincing reasons'"); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (ALJ engages in two-step analysis to determine credibility: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give "specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.") (internal quotation marks omitted).

When determining the credibility of a plaintiff's complaints of pain or other limitations, the ALJ may properly consider several factors, including the plaintiff's daily activities,

inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may also consider the ability to perform household chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment for excessive pain. *Id.*; *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.") (internal quotation marks omitted).

As the Ninth Circuit explained in *Molina*;

> In evaluating the claimant's testimony, the ALJ may use ordinary techniques of credibility evaluation. For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms[.] While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting[.] Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

*Molina*, 674 F.3d at 1112-13 (citations and internal quotation marks omitted).

The ALJ applied the correct two-step analysis. Tr. 25, 26. He concluded that while Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of

those symptoms were not entirely consistent with the medical and other evidence in the record. Tr. 26.

The ALJ noted Plaintiff's allegations that she was unable to stand on her feet or sit for a long time. *Id.*; *see also* Tr. 62 (hearing testimony that she fidgets all the time because sitting is uncomfortable; she must change position frequently to relieve her pain; she alternates sitting and standing); Tr. 245 (stating in a June 15, 2013 Function Report that she cannot sit for long or stand on her feet for long). The ALJ observed that while Plaintiff alleges that it is painful to sit or stand, she does not lay down frequently during the day. *Id.*; *see also* Tr. 62-63. The ALJ also cited Plaintiff's testimony that Plaintiff was unable to work due to her lower back, hip, and left shoulder impairments. *Id.* Plaintiff reported being able to lift only five pounds and walk less than 1/25 of a mile. *Id.*; *see also* Tr. 250. She asserted that her impairments affected her abilities to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs. *Id.*; *see also* Tr. 250. The ALJ also remarked that while Plaintiff testified she no longer cleaned her bathtub, she was able to wash dishes and dust. Tr. 26.

The ALJ found that Plaintiff's subjective reports were not entirely credible because of inconsistencies regarding her alleged onset date, contradictions with the medical record, inconsistent statements, and her daily activities. The ALJ initially observed that Plaintiff's allegations regarding the disabling nature of her back pain were inconsistent with medical records indicating that while she had an initial diagnosis regarding her back in 2011, she then had subsequent normal examination findings, and did not have significant positive findings until December 2012, some eighteen months after her alleged onset date. Tr. 26-27 (citing to Tr. 75 (Sept. 2011 chart note noting Plaintiff's complaint of low back pain when moving and lifting

objects for the past two months; noting the presence of paravertebral muscle spasm and tenderness upon lumbosacral exam; diagnosing degenerative disc disease but no MRI done at the time, and providing a prescription for Vicodin); Tr. 410-13 (Sept. 2012 chart note of comprehensive medical examination finding Plaintiff to be a "healthy adult female" with no report of back pain in medical history and denial, in section addressing musculoskeletal systems, of any joint pain, back pain, stiffness, weakness, arthritis, loss of strength, or muscle aches); Tr. 406-07 (Dec. 2012 chart note referring to complaint of back pain "for a couple months"; finding paravertebral muscle spasm and tenderness on exam as well as positive right and left lying and sitting straight leg raises)). As a result, the ALJ found that the medical records did not support Plaintiff's July 1, 2011 alleged onset date regarding her back impairment. Tr. 27; *see also id.* (noting that in August 2013, Plaintiff alleged lumbar back pain for ten to fifteen years which also was inconsistent with her alleged onset date).

The ALJ further found that the objective medical record did not support Plaintiff's limitations because, for example, in August 2013, she had active range of motion including flexion, extension, lateral motion and rotation, no midline step-deformity, and no palpable spasm or mass. Tr. 27 (citing Tr. 332). Further, although the August 2013 exam showed tenderness at L4-L5, she had negative straight leg raises, normal femoral nerve stretch, normal Faber maneuver, and no significant hip restriction or pain with passive hip range of motion. *Id.* (citing Tr. 332). Plaintiff also had normal reflexes, strength, and gait. *Id.* (citing Tr. 333); *see also* Tr. 332-33 (noting July 2013 x-ray showed well-maintained disc space; diagnosing muscular lumbar back pain). Similarly, in March 2014, Plaintiff reported no muscle aches, no muscle weakness, no arthralgias or joint pain, and no back pain. Tr. 28 (citing Tr. 361-62). At that time, in the

physical examination of her musculoskeletal system, she had normal tone and motor strength and normal movement of all extremities. Tr. 28 (citing Tr. 361-62). She also reported no exercise intolerance, no arm pain on exertion, no shortness of breath when walking, and no weakness or fatigue. *Id.* (citing Tr. 361-62). And, in 2015, the physical therapist Plaintiff was seeing after shoulder surgery noted that she could ambulate up to one mile. Tr. 28 (citing Tr. 1000-01). This, the ALJ remarked, contradicted Plaintiff's assertion that she can walk only 1/25 of a mile. *Id.*

The ALJ also noted that in 2016[2], Plaintiff again presented with back and leg pain but while she had some low back tenderness and abnormal gait, she had normal muscle strength, intact nerves, no weakness, and negative sensory deficits. Tr. 27 (citing Tr. 508-10 (diagnosing lumbosacral pain and lumbar radicular pain and recommending moist heat, exercises, chiropractic, and "[m]eds with warnings," with recommendations of diet, exercise, and weight loss)). Finally, as to her back pain, the ALJ indicated that Plaintiff's back problems were treated conservatively. Tr. 27 (noting that in 2013, Plaintiff was "advised merely to undergo physical therapy") (citing Tr. 330-33).

Plaintiff has had surgery on both shoulders. The ALJ first discussed her left shoulder, noting that her initial complaints of pain were in May 2013 at which time she had tenderness upon exam, was diagnosed with left shoulder impingement syndrome, and had a cortisone injection shortly thereafter. Tr. 27 (citing Tr. 389, 385). Later that year, she was diagnosed with a rotator cuff tear and had surgery in November 2013. Tr. 27 (citing 374, 377, 351, 551, 557). The ALJ explained that four months following surgery, Plaintiff reported she was doing well

---

[2] The date of this record is somewhat confusing but it appears to be an August 2015 office visit, not one from January 2016.

with only minimal discomfort and that her shoulder was much improved compared to its pre-surgery condition. Tr. 28 (citing Tr. 343). On examination, she had no tenderness in the left shoulder, satisfactory passive range of motion, improving active range of motion, and improving strength. *Id.* (citing Tr. 343). A few months later, in June 2014, she was again noted to be making a good recovery. Tr. 28 (citing Tr. 568). And, as noted above, the ALJ noted that during her annual physical examination in March 2014, she had normal motion of all extremities and normal musculoskeletal findings. Tr. 28 (citing Tr. 362). However, in a September 2014 physical examination, she experienced tenderness and some limited range of motion upon physical exam. Tr. 29 (citing Tr. 481). Nonetheless, she had normal motor strength and normal reflexes and coordination at that time. Tr. 28 (citing Tr. 481).

The ALJ noted that Plaintiff underwent physical therapy for her left shoulder from December 2013 through May 2014, and again from August 2014 through February 2015. Tr. 27 (citing Tr. 1000-05). At the time of her 2015 discharge from physical therapy, the ALJ stated, Plaintiff was able to raise her left arm over her head, lift or carry light to medium loads without symptoms, and drive with only slight symptoms. Tr. 28 (citing Tr. 1000-01). She also could reach up to a high shelf to place an empty cup, although the record indicates that this caused some increased symptoms. Tr. 28 (citing Tr. 1000-01). Her physical therapy records further state that while Plaintiff complained of pain ranging from 3 to 9 out of 10 in 2014, she rated her pain as 2 out of 10 at her February 2015 physical therapy discharge. Tr. 28 (citing Tr. 1000).

Based on this medical evidence and Plaintiff's own reports to her practitioners at her physical examinations, the ALJ found that Plaintiff's allegations that she can lift only five pounds and that her physical impairments prevent her from working were not supported. Tr. 28.

While recovering from her left shoulder surgery, Plaintiff complained of right shoulder pain and weakness in June 2014. Tr. 28 (citing Tr. 568). Dr. David Galt, M.D. diagnosed her with biceps tenosynovitis, derangement of the AC joint, impingement syndrome, and rotator cuff tear. Tr. 28 (citing Tr. 569). Plaintiff still had 5/5 strength in both shoulders and only some limitations in her range of motion. Tr. 28 (citing Tr. 568-69). Nonetheless, in July 2014, she underwent shoulder surgery. Tr. 29 (citing Tr. 448, 783).

The ALJ recited the post-surgery medical evidence regarding Plaintiff's right shoulder, noting that she continued to complain of pain in December 2015, January 2016, March 2016, and thereafter. Tr. 29 (citing Tr. 513 (Dec. 2015); Tr. 1036 (Jan. 2016); Tr. 1040 (Mar. 2016)). The ALJ noted, however, that despite the complaints of pain, Plaintiff had "normal senses and no weakness" in December 2015, Tr. 29 (citing Tr. 513), normal range of motion and 5/5 strength in both upper extremities in January 2016, Tr. 29 (citing Tr. 1036-37), and no neurological deficits with good rehabilitation potential in March 2016. Tr. 29 (citing Tr. 1039-40, 997). In January 2016, Plaintiff received an injection of Lidocaine and Kenalog into her right shoulder, which her physician noted in April 2016 had been helpful. Tr. 29 (citing Tr. 1037, 1043). In April 2016, she had some tenderness in the right shoulder, had 5/5 strength in both shoulders, and according to the ALJ, she had a normal range of motion. Tr. 29-30 (citing Tr. 1043-44). Finally, the ALJ noted that while Dr. Galt remarked in April 2016 that he was not clear why Plaintiff continued to have pain in her right shoulder, he indicated her exam was encouraging and that Plaintiff's follow up with him was to be as needed. Tr. 30 (citing Tr. 1043-44). The ALJ found that Dr. Galt's notes did not support Plaintiff's assertion that she could lift only five pounds and was unable to use her right shoulder. Tr. 30.

As to her activities of daily living, the ALJ recounted that Plaintiff reported that she had no problems with personal care, was able to take care of her dog and cat, could prepare her own meals, perform house and yard work such as sweeping floors, washing laundry, and dusting, could shop for food, and go outside every day.  Tr. 30.  Additionally, Plaintiff reported that she worked on arts and crafts at home.  *Id.*  The ALJ found that although a claimant does not have to be utterly incapacitated to be found disabled, Plaintiff's performance of "all of these activities [did] not support [her] allegations that she cannot work."  *Id.*

Plaintiff argues that the ALJ erred in rejecting her subjective symptom allegations because the ALJ failed to specify which testimony he found not credible, failed to identify any medical examination finding that was actually inconsistent with any of Plaintiff's alleged limitations, and failed to identify inconsistencies between Plaintiff's actual activities and her alleged limitations.  Defendant contends that the ALJ reasonably evaluated Plaintiff's subjective symptom testimony and that his conclusion was supported by substantial evidence in the record. While I agree with Defendant as to Plaintiff's allegations related to her back and left shoulder, I disagree with Defendant as to the allegations related to Plaintiff's right shoulder.

First, the ALJ's reliance on alleged back symptoms which did not manifest to a disabling level until almost eighteen months after her alleged onset date was an appropriate basis for rejecting her testimony regarding the limitations caused by that impairment.  *See Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").  Second, contrary to Plaintiff's argument, the ALJ specifically referred to Plaintiff's testimony about the inability to walk more than 1/25 of a mile and identified evidence which undermined that allegation.  Thus, the ALJ did specify the testimony

he rejected. Third, the ALJ pointed to places in the medical record where, contrary to Plaintiff's allegations of disabling back pain which prevented her from walking and working, Plaintiff reported no back pain and an ability to walk up to a mile. *E.g.*, Tr. 26-27 (citing Tr. 410-13 (Sept. 2012 record)); Tr. 28 (citing Tr. 361-62 (Mar. 2014 record)); *see also* Tr. 28 (citing Tr. 1000-01 (2015 physical therapy record stating Plaintiff could ambulate up to one mile)). Because these records so clearly contradict Plaintiff's allegations, the ALJ did not err in relying on them to find her allegations regarding her limitations from her back impairment to be not credible. Finally, the ALJ did not err in observing that Plaintiff's treatment of her back impairment has been primarily with physical therapy, a fairly conservative approach. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment.") (internal quotation marks omitted).

The medical evidence cited by the ALJ also undermines Plaintiff's allegations regarding her left shoulder impairment. Similar to her reports regarding her back, Plaintiff reported in March 2014, and thus, after her November 2013 left shoulder surgery, that she had no muscle weakness, no arthralgias, and no joint pain. Tr. 28 (citing Tr. 361-62 (Mar. 2014 record)). She also had normal movement of all extremities. *Id.* (citing Tr. 361-62 (Mar. 2014 record)). This clearly contradicts her allegation that her shoulder pain prevents her from working. Further, even when she later had some impairment in her range of motion, she had normal strength and by February 2015, she could raise her left arm overhead, could lift or carry light to medium loads without symptoms, and drive with only slight symptoms. Tr. 28 (citing Tr. 1000-01). Her pain had greatly diminished to a 2 out of 10. *Id.* (citing Tr. 1000). The ALJ reasonably concluded that as to her left shoulder, Plaintiff's statements to her medical practitioners along with their

physical examination findings undermined her allegation that she could lift no more than five pounds.

In contrast, however, the ALJ did not accurately summarize the medical evidence regarding Plaintiff's right shoulder symptoms. The ALJ did acknowledge Plaintiff's continued reports of pain after her July 2014 right shoulder surgery. Tr. 29. But, he relied on what he considered to be normal range of motion findings, as well as normal strength findings, to conclude that her pain was not as limiting as she alleged. Tr. 29-30. The records, however, do not show normal findings. In January 2016, for example, under "Range of motion," Dr. Galt wrote "Normal Glenohumeral Rhythm *with painful arc of motion*." Tr. 1036 (emphasis added). This does not reflect normal range of motion. If there were any doubt, the next page confirms that Plaintiff's right shoulder range of motion was limited at that time. Tr. 1037 (showing decreased range of motion of the right shoulder upon external and internal rotation). She also had positive Hawkins/Neer and Sheer Sign testing for impingement. *Id.* And, while her strength was either 5-/5 or 5/5, two of the five strength tests of the right shoulder produced pain. *Id.* Similarly, while the ALJ cited Plaintiff's April 2016 exam with Dr. Galt as revealing normal range of motion, the record does not support that statement. Dr. Galt began the chart note by stating that Plaintiff "still has restricted [range of motion]." Tr. 1043. In the "Range of motion" entry on physical exam, he noted, as he did in January 2016, that she had "Normal Glenohumeral Rhythm *with painful arc of motion*." *Id.* (emphasis added). Her range of motion on active external rotation was even more limited than it was in January 2016. *Id.* Dr. Galt again referred to Plaintiff's "painful limitation of active use of her right shoulder." Tr. 1044. These records were inaccurately described by the ALJ and thus, are not substantial evidence supporting a

determination that Plaintiff's allegations regarding limitations with her right shoulder are not credible.

As to Plaintiff's activities of daily living, I agree with Plaintiff that the ALJ did not sufficiently specify what subjective allegations were contradicted by the activities noted. Instead, the ALJ made a general comment that the activities described did not support her allegation that she could not work. *E.g.*, *Brown-Hunter v. Colvin*, 806 F.3d 487, 493-94 (9th Cir. 2015) (ALJ erred when finding claimant's testimony not credible but failing to explain which testimony was not credible). While the ALJ had previously referred to Plaintiff's allegations regarding her inability to lift more than five pounds or walk more than 1/25 of a mile, he did so in the context of discussing the medical evidence and Plaintiff's statements to her medical providers. In discussing her daily activities, however, the ALJ referred only to Plaintiff's general assertion that she cannot work.

Additionally, I agree with Plaintiff that Plaintiff's description of her daily activities and how she performs them does not create an apparent conflict with her assertion that her limitations affect her ability to work full-time. Under *Molina*, activities of daily living may show an ability to sustain competitive full-time work or, alternatively, may contradict allegations of disabling pain. Here, Plaintiff testified that she alternates sitting and standing to alleviate her pain, she drives, she uses a computer, cannot reach overhead with the right arm, can reach forward with both arms, does not do a lot of housecleaning and has an aunt who helps her with the bathtub, floors, and "stuff," but that she can do the dishes and dust, including using a duster for her floor. Tr. 59, 62, 65, 67, 68, 70. As to those latter housecleaning tasks, she testified that she does these tasks in short periods of time and does not do them all at once. *Id.* She described berry and

mushroom picking while visiting her parents but clarified that the berries are on a fence and she reaches only straight out in front of her to pick them from the front, and she picks only a handful for several minutes and stops. Tr. 65-66; *see also* Tr. 66-67 (responding to ALJ's question of how she can pick berries if she has problems with her upper extremities and noting that they are on a fence and she can reach straight forward to get the ones in front). Plaintiff's testimony indicates that she engages in a limited number of activities and on a limited basis. This evidence is not obviously inconsistent with her testimony that her limitations prevent her from working and is not obviously contradictory with her assertion that she suffers from disabling pain. Accordingly, the ALJ erred by relying on Plaintiff's activities of daily living to undermine her subjective limitations testimony.

In summary as to Plaintiff's credibility, the ALJ gave clear and convincing reasons, supported by substantial evidence in the record, to reject Plaintiff's limitations attributable to her back and left shoulder impairments because he relied on contradictions in the objective medical evidence, inconsistent statements made by Plaintiff to her medical practitioners, and in the case of her back, conservative treatment. In contrast, the ALJ failed to give clear and convincing reasons to support his rejection of Plaintiff's subjective testimony in regard to her right shoulder impairment.

II. Physician Opinions

Plaintiff's treating physician Dr. Douglas McMahon, D.O., completed two separate physical functional assessments for Plaintiff. Tr. 401 (Feb. 25, 2013); Tr. 1041-42 (Apr. 8, 2016). Dr. McMahon also completed a mental capacities evaluation in February 2013. Tr. 402. Dr. Galt, who treated Plaintiff's shoulder issues, also completed a physical functional capacity

assessment for Plaintiff in April 2016. Tr. 1046. The ALJ gave little weight to all of these opinions. Plaintiff contends this was error.

Social security law recognizes three types of physicians: (1) treating, (2) examining, and (3) nonexamining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant. *Id.*; 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2). If the treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). If the treating physician's opinion is not contradicted by another doctor, the ALJ may reject it only for "clear and convincing" reasons supported by substantial evidence in the record. *Ghanim*, 763 F.3d at 1160-61.

Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject the treating physician's opinion without providing "specific and legitimate reasons" which are supported by substantial evidence in the record. *Id.* at 1161; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). And, when a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the ALJ must still articulate the relevant weight to be given to the opinion under the factors provided for in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6); *Id.* at 1161; *Orn*, 495 F.3d at 632-33.[3]

---

[3] Plaintiff contends that the "clear and convincing" standard applies because the ALJ cited only nonexamining physician opinions as contradictory. Plaintiff argues that because nonexamining physician opinions are not considered "substantial evidence" by themselves, they

A. Dr. McMahon

In the February 2013 physical capacities assessment, Dr. McMahon listed Plaintiff's diagnoses as L-5 degenerative disc disease with radiculopathy and fibromyalgia. Tr. 401. He rated her prognosis as poor. *Id.* He opined that she could stand/walk three hours in an eight-hour day and sit eight hours in an eight-hour day. *Id.* He stated she could never lift fifty pounds, rarely lift twenty pounds, occasionally lift ten pounds, and frequently lift less than ten pounds. *Id.* She could never stoop, bend, or crouch, but could frequently finger, grasp, and handle. *Id.* She experienced pain severe enough to interfere with her attention and concentration. *Id.* As signs and symptoms, he cited her positive leg raising test, sensory loss, muscle weakness, and reduced range of motion. *Id.* In the mental capacities evaluation completed at the same time, he identified substance dependence as Plaintiff's "signs and symptoms," and estimated that her impairments or treatment would cause her to miss about three days per month of work. Tr. 402.

In April 2016, Dr. McMahon completed another physical capacities evaluation. There, he listed Plaintiff's primary diagnosis as shoulder impingement and rotator cuff syndrome with a secondary diagnosis of lumbago. Tr. 1041. He opined that she could occasionally lift ten pounds and frequently lift less than ten pounds, consistent with his 2013 assessment. *Id.* He opined she could stand or walk less than two hours in an eight-hour day and sit less than six hours in an eight-hour day. *Id.* She would need to periodically alternate sitting and standing to relieve pain

---

cannot create the conflict in the record triggering the lesser "specific and legitimate" standard. Pl. Reply 1-2, ECF 15. Plaintiff is mistaken. While a nonexamining physician's opinion "cannot by itself constitute substantial evidence that justifies the rejection of the opinion" of a treating physician, it "may suffice to establish a conflict among the medical opinions." *Widmark v. Barnhart*, 454 F.3d 1063, 1066 & n.2 (9th Cir. 2006) (internal quotation marks omitted). Thus, the specific and legitimate standard applies here.

or discomfort. *Id.* She was limited in the ability to push or pull with her upper extremities to less than two hours and less than ten pounds. *Id.* She could occasionally climb ramps and stairs, never climb ladders, ropes, and scaffolds, could frequently balance, occasionally stoop, but never kneel, crouch, or crawl. *Id.* She was limited in reaching in all directions, including overhead, but had unlimited handling, fingering, and feeling. Tr. 1042. She had no visual limitations and no environmental limitations except to avoid all exposure to hazards. *Id.*

The ALJ gave little weight to Dr. McMahon's opinions, concluding that the February 2013 opinions were not consistent with his own treatment records showing that Plaintiff had active range of motion including flexion, extension, lateral motion and rotation, no midline step-off deformity, and no palpable spasm or mass. Tr. 31. Additionally, the ALJ noted that while Plaintiff had tenderness at L4-5, she had negative straight leg raising tests, normal femoral nerve stretch, normal Faber maneuver, and no significant hip restriction or pain with passive hip range of motion. *Id.* She also had normal reflexes, strength, and gait. *Id.* She was "simply advised to undergo physical therapy." *Id.* Additionally, as to the missing work because of her prescribed medications, the ALJ rejected this limitation because there was no evidence in Dr. McMahon's treatment records that Plaintiff experienced any limitation from a substance use disorder. *Id.* The ALJ rejected Dr. McMahon's April 2016 opinions "[f]or the same reasons." *Id.*

Plaintiff argues that Dr. McMahon's treatment records support his opinions. She suggests that the ALJ focused only on "the more benign" findings from the treatment notes, taking them out of context. Plaintiff asserts that the referral to physical therapy was not, as the ALJ put it, because "her symptoms were so mild[.]" Defendant contends that the ALJ gave specific and legitimate reasons, supported by the record, for his treatment of Dr. McMahon's opinions. I agree

with Defendant.

As of his February 2013 opinion, Dr. McMahon's treatment notes showed muscle spasm and tenderness but otherwise normal examination findings in 2011, and positive straight leg raises in December 2012.  Tr. 75, 406-07.  But, the treatment records also included a May 2012 report denying back pain, muscle weakness, muscle aches, and loss of strength, Tr. 422, and a September 2012 report of Plaintiff as a "healthy adult female" with no report of back pain in her medical history and a denial of any joint pain, back pain, weakness, loss of strength, etc.  Tr. 410-13.  Although Dr. McMahon relied on her straight leg raises to support his opinions, he also noted sensory loss and muscle weakness which do not appear in his pre-February 2013 treatment notes.  Tr. 399-441  Moreover, the only reference to range of motion in this time period is an unspecified statement of "decreased ROM" with no actual ranges provided.  Tr. 403.  Dr. McMahon also relied on fibromyalgia to support his findings, an impairment which is not referenced in his records. Moreover, just several months after Dr. McMahon's February 2013 assessment, Plaintiff had, as the ALJ noted, active range of motion, no palpable spasm or mass, normal reflexes, strength, and gait, and negative straight leg raises.  Tr. 332-33.  And, while the treatment record did not refer to her back impairment as "mild," the ALJ's interpretation of the physical therapy referral as indicating an impairment with less severe restrictions than given by Dr. McMahon was not unreasonable.

Plaintiff does not appear to raise an argument regarding Dr. McMahon's mental capacities assessment opinion regarding her absences from work other than to say that her treatment record shows frequent migraine headaches which would likely result in such absences.  Plaintiff cites to only one reference in her record to migraines which was in March 2014, after Dr. McMahon's

mental capacities assessment. She also fails to recognize that Dr. McMahon did not cite migraines as a basis for his opinion regarding her absences. Thus, she fails to show that the ALJ erred on this issue.

As to the April 2016 assessment, the overall record in regard to Plaintiff's back impairment shows some limitations but with fairly normal assessments of strength and range of motion. *E.g.*, Tr. 332-34 (Aug. 2013 report with normal range of motion, normal leg raise, normal motor tone and bulk, normal reflexes, normal strength); Tr. 362 (Mar. 2014 normal tone and strength, no tenderness of joints, bones, or muscles, no back pain); Tr. 445 (Oct. 2014 emergency department record stating negative for back pain and arthralgia, noting good range of motion, no tenderness to palpations); Tr. 510 (Aug. 2015 report of low back pain, finding tenderness and muscle spasm with abnormal gait but normal muscle strength without spasm or tenderness and no reduced range of motion); *see also* Tr. 384 (July 2013 lumbar x-ray showing normal lumbar lordosis and normal lumbar vertebral body height, alignment, and intervertebral disc pace, but with diffuse osteopenia).

An ALJ may properly reject a physician's opinion when it is unsupported by the treatment record. *E.g.*, *Bayliss*, 427 F.3d at 1216 (discrepancy between a doctor's chart notes, recorded observations, and opinions, and an assessment of a claimant's abilities, is a clear and convincing reason to reject the doctor's assessment). Such is the case here, at least in regard to Plaintiff's back and mental health limitations. While the record shows a back impairment and some occasional positive findings, Dr. McMahon's overall treatment record shows that generally, the back impairment symptoms were inconsistent and were treated conservatively. Thus, the level of limitation assessed by Dr. McMahon was unsupported by his own treatment records and the ALJ

did not err in rejecting those portions of his opinions.  As to the shoulder restrictions included in Dr. McMahon's April 2016 report, I rely on the discussion of Dr. Galt's opinions to conclude that as to limitations regarding Plaintiff's right shoulder impairment, the ALJ erred in rejecting both physicians' opinions.

B.  Dr. Galt

Dr. Galt, Plaintiff's orthopedist, completed a "Return to Work Recommendations/Restrictions" form on April 26, 2016.  Tr. 1046.  He listed her "Return to Work Status" as "Modified work with limitations."  *Id.*  He made no recommendations regarding the number of hours that Plaintiff could stand, walk, or sit during a regular work day.  *Id.*  But, he opined that she could frequently lift or carry ten pounds or less, occasionally lift or carry eleven to twenty-five pounds, and never lift or carry twenty-six pounds or more.  *Id.*  He further assessed that she could never reach with her right arm, either to or above shoulder level, and could only occasionally reach with her left arm, either to or above shoulder level.  *Id.*  He also stated she could never push or pull with either arm.  *Id.*

The ALJ gave Dr. Galt's opinions little weight because they were not fully supported by the medical record.  Tr. 31.  The ALJ noted that during his April 2016 examination, Dr. Galt reported 5/5 strength in both shoulders and a normal range of motion.  *Id.*  The ALJ further explained that although it was unclear to Dr. Galt why Plaintiff continued to have painful limitation of the active use of her right shoulder, her exam was encouraging because she had satisfactory healing following surgery.  *Id.*  Additionally, Dr. Galt noted that Plaintiff need only follow-up with him as needed.  *Id.*  The ALJ found, however, that Dr. Galt's opinion that overhead reaching was limited is generally consistent with the medical records.  *Id.*  The RFC

limits Plaintiff to occasional bilateral overhead reaching which is consistent with Dr. Galt's opinion as to the left shoulder but represents a rejection of his opinion that she can never reach overhead with her right shoulder.

Plaintiff argues that the ALJ erred in rejecting Dr. Galt's opinions because contrary to the ALJ's assertion, the medical records show she continued to have significant problems with her right arm. I agree with Plaintiff. As explained above in discussing the ALJ's assessment of Plaintiff's credibility, the records the ALJ cited in support of his determination that Plaintiff had normal range of motion and normal strength in 2016 actually show impaired range of motion and pain associated with strength testing. Furthermore, the physical therapy examinations during that time indicate that Plaintiff's right shoulder did not fully recover with surgery and that Plaintiff continued to have problems with activities of daily living, including personal care, lifting and carrying, dressing, and reaching. Tr. 997 (Feb. 2, 2016 record also noting that her pain, weakness, and stiffness in the right shoulder had gotten progressively worse since surgery). In late March 2016, the physical therapist noted that Plaintiff had made progress with motion and strength in the right shoulder but continued to have functional limitations and any increase in activity aggravated he symptoms. Tr. 1040. The physical therapist believed Plaintiff was nearing her recovery potential and referred Plaintiff back to her physician for further consultation. *Id.* And while Dr. Galt did indicate in late April 2016 that Plaintiff was to follow up with him as needed, he also noted other options including an injection and an MRI to rule out another rotator cuff tear and to assess muscle atrophy. *Id.* He also ordered that she continue physical therapy for rehabilitation. *Id.*

Overall, the medical records show continued functional impairment in the right shoulder

which supports, rather than contradicts, Dr. Galt's and Dr. McMahon's opinions regarding right shoulder limitations. Thus, the ALJ erred in rejecting those portions of the treating physicians' opinions.

III. Vocational Expert Testimony & Step Four/Step Five

Plaintiff contends that the ALJ erred by relying on vocational expert (VE) testimony which deviated from the Dictionary of Occupational Titles (DOT) without sufficient explanation, and by identifying jobs at steps four and five that are inconsistent with Plaintiff's reaching limitations. Defendant argues that Plaintiff simply rehashes her prior arguments and that she waived any challenge to the VE's testimony by failing to raise an objection at the hearing. Finally, Defendant contends that any error is harmless because there is no conflict between the job of cashier and overhead reaching.

I do not reach Plaintiff's argument that the VE failed to adequately explain any conflict between his testimony and the DOT because the hypothetical posed to the VE and testimony elicited in response and upon which the ALJ relied in formulating the RFC, failed to include limitations related to Plaintiff's right shoulder impairment. Because an incomplete hypothetical cannot support the VE's testimony, the ALJ cannot rely on it. *Valentine v. Comm'r*, 574 F.3d 685, 690 (9th Cir. 2009) (hypothetical presented to the VE is derived from the RFC; to be valid, the hypothetical presented to the VE must incorporate all of a plaintiff's limitations); *Bray v. Comm'r*, 554 F.3d 1219, 1228 (9th Cir. 2009) (vocational expert opinion evidence is reliable if the hypothetical sets out all the limitations and restrictions of the particular claimant); *Nguyen v. Chater*, 100 F.3d 1462, 1466 n.3 (9th Cir. 1996) (an incomplete hypothetical cannot "constitute competent evidence to support a finding that claimant could do the jobs set forth by the

vocational expert"). As a result of the errors in rejecting evidence, the ALJ's step four and step five findings are not supported by substantial evidence in the record.

IV. Remand for Additional Proceedings

In social security cases, remands may be for additional proceedings or for an award of benefits. *E.g., Garrison*, 759 F.3d at 1019 (explaining that if "additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded[,]" but "in appropriate circumstances courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits") (internal quotation marks omitted). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Id.* at 1020; *see also Treichler v. Comm'r*, 775 F.3d 1090, 1100 (2014) ("credit-as-true" rule has three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully developed and further administrative proceedings would serve no useful purpose. *Id.* Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.; see also Treichler*, 775 F.3d at 1101 (when all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule" of remanding to the agency).

Plaintiff argues that remand for benefits is appropriate because when the improperly rejected evidence is credited as true, there are no further issues to resolve and further administrative proceedings would not be useful. I disagree. Here, the ALJ erred only in regard to limitations related to Plaintiff's right shoulder. The record at steps four and five is not fully

developed when these limitations are properly assessed.  Thus, a remand for additional proceedings is appropriate.

## CONCLUSION

The Commissioner's decision is affirmed in part, reversed in part, and remanded for additional proceedings

IT IS SO ORDERED.

Dated this _____29_____ day of _____August_____, 2018

Marco A. Hernandez
United States District Judge